

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00104-CV

IN THE INTEREST OF N.F., A CHILD

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 89,089-E, Honorable Carry Baker, Presiding

August 1, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

"Nina" and "John" appeal the trial court's order terminating their parental rights to their child "N.F."[1]  Nina and John assert the evidence is neither legally nor factually sufficient to support the trial court's finding that termination of their parental rights is in the best interest of the child.  We affirm the trial court's order.

---

[1]  To protect the child's privacy, we will refer to the appellant mother as "Nina," the appellant father as "John," and the child by her initials.  See TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2017); TEX. R. APP. P. 9.8(b).

Background

In August of 2016, the Texas Department of Family and Protective Services received a report that Nina tested positive for methamphetamine and marijuana on a drug screen required by her probation. During the investigation, fourteen-month-old N.F. also tested positive for methamphetamine. John refused to submit to a drug screen, but admitted that he had a history of methamphetamine and marijuana use.

In September of 2016, the Department was granted temporary managing conservatorship of N.F. and assigned Cynthia Reeves as the caseworker. Reeves provided a service plan to each parent to assist them in regaining custody of N.F. and the court ordered compliance with the plan requirements. The service plan required Nina and John to complete the following services: attend individual counseling; locate and maintain stable housing; maintain legal employment; provide medical support; maintain a drug-free lifestyle and abstain from the use of illegal drugs; submit to random drug testing; obtain a substance abuse assessment with Outreach Screening Assessment and Referral (OSAR) and follow any recommendations; complete parenting classes; maintain contact with the Department; and attend weekly visitation with N.F. Due to admissions by John and Nina of family violence between them, John was required to participate in a Batterer's Intervention and Prevention Program (BIPP) while Nina was required to complete the Women Against Violence and Prevention Program (WAV) and attend a domestic violence support group.

At the time of the removal, John was living with his mother and he continued to live with her during the pendency of the case. John submitted to some but not all of the

requested drug testing. All of the drugs screens he submitted to were positive for methamphetamine and marijuana except for one test in October of 2016 that was unable to be completed because he did not have enough hair to test. He did not submit to two of the tests because he knew the results would be positive and he saw no reason to "waste money" on a drug test. John did not obtain an OSAR assessment.

John attended counseling but was discharged after he "became angry and stormed out" of the counselor's office. When the caseworker explained the importance of completing counseling, John said that he "wasn't going to do an f'ing thing." At trial, John explained that he missed one counseling session and that the caseworker said the Department would not pay for counseling so "I just stopped going to all of them because I was supposed to pay for them and couldn't." John testified that he "could be a good father," and claimed he stopped participating in services because "I put it in the front of my mind that [N.F.] wasn't mine."[2]

John did not participate in BIPP or complete a parenting class. John exercised most of the weekly visits with N.F. On one visit, John and Nina argued in front of the child and the supervisor had to intervene. John was not employed consistently while the case was pending and he did not pay any of his court-ordered medical support. In January of 2018, he was fired from a job he held for one and a half months because he tested positive for marijuana. At the time of trial, John had a job in Borger for three weeks. He and Nina were living in his mother's home with his seventeen-year-old daughter and his mother's

---

[2] Nina gave the Department the name of another man that she claimed was the father of N.F. Parentage testing during the pendency of the case excluded the man as the father of N.F. John was adjudicated as the father of N.F. during the pendency of the case.

3

children ages eight, six, and five. There is no room for N.F. at his mother's home, but he is "working on getting a place."

Nina did not maintain stable housing and "moved around so much" it was difficult for the caseworker to make contact with her outside of the Department's office. Nina did not attend individual counseling or pay any of the court-ordered medical support. Although she acknowledged violence in the past in her relationship with John, she did not participate in the WAV program. Nina testified that it has been around eighteen months since John was violent with her. Nina attended visitation with N.F. but recently missed two visits because she was living in Plainview.

Nina was discharged twice from drug treatment at Serenity House in Plainview for failure to complete the program. She was arrested in July of 2017 and incarcerated for a month before completing a 90-day drug treatment program in November of 2017 as a condition of probation.[3] Although Nina claimed she was sober three months before her treatment, she tested positive for methamphetamine on a drug test requested by the Department before her arrest. Nina has not tested positive since she completed drug treatment.

Nina testified that she was living with John and working for the same company as John for the past three weeks. Before that she was living with her friend Penney in Plainview. Penney and her husband were helping Nina "get back on [her] feet." Penney was released from prison "fifteen to sixteen months ago" and provides transportation for

---

[3] Nina was on three years' probation for three theft cases which were enhanced to a state jail felony. She was required to complete drug treatment as a condition of her probation because she failed multiple drug tests after N.F. was removed. After she completed drug treatment, her probation was extended another three years.

Nina because Nina does not have a vehicle and her driver's license is suspended. Nina did not complete a parenting class but she has made arrangements to take a class in Lubbock on Saturday after the trial. When asked whether her plan was to stay with John or go back to Plainview and live with Penney, Nina said "I'm not sure what my plan is. Today will decide (sic) what plan that I make." Nina is adamant that she and John love N.F. "like nobody else can."

N.F. has made "immense progress" in her foster placement. She was extremely overweight for her age when she came into care. She had issues with her walking and her ability to use her legs effectively. After working with Early Childhood Intervention (ECI) services, she has improved. N.F. will need to be evaluated by an orthopedic specialist for her knee issues. Although the current foster parents do not plan to adopt N.F., the Department is looking for an adoptive home and "has already submitted a legal risk placement."[4]

The trial court terminated John and Nina's parental rights to N.F. on the grounds of endangering conditions, endangerment, and failure to comply with a court order that established actions necessary to retain custody of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O) (West Supp. 2017).[5] The court also found that clear and convincing evidence demonstrated that termination was in the best interest of N.F. *See* § 161.001(b)(2).

---

[4] A legal risk placement is the placement of a child into an adoptive home prior to a final order terminating parental rights.

[5] Further references to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

Applicable Law

A parent's rights to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)). Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interest. *See id.*

In a case to terminate parental rights by the Department under section 161.001 of the Family Code, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014); *In re J.F.C.,* 96 S.W.3d 256, 264 (Tex. 2002). Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.— Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is

6

necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d at 362. We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894-95.

## Standards of Review

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.,* 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Even evidence that does more than raise surmise or suspicion is not sufficient unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *In re K.M.L.,* 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient, and we must reverse. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We must also consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

Analysis - Best Interest of the Child

John and Nina do not contest the statutory basis for termination under section 161.001(b)(1), thereby conceding that the evidence was legally and factually sufficient to terminate their parental rights under at least one of subsections (D), (E), and (O). John and Nina challenge the factual and legal sufficiency of the evidence supporting the best interest finding made under section 161.001(b)(2).

A determination of best interest necessitates a focus on the child, not the parent. *See In re B.C.S.,* 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.). Appellate courts examine the entire record to decide what is in the best interest of the child. *In re E.C.R.,* 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006).

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors include: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent. *Id.* "[T]he State need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'" *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)). Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re E.C.R.*, 402 S.W.3d at 249. The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). We must also bear in mind that a child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in determining best interest. *See In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

Several *Holley* factors support the trial court's determination that termination of John and Nina's parental rights is in the child's best interest.

The Desires of the Child

N.F. was twenty-one months old at the time of trial and too young to express her desires. Some courts have held that the young age of a child may render this factor neutral*. In re D.W.,* 445 S.W.3d 913, 926 (Tex. App.—Dallas 2014, pet denied); *In re A.C.*, 394 S.W.3d 633, 643 (Tex. App.—Houston [1st Dist.] 2012, no pet.). While John and Nina regularly visited N.F., the caseworker testified that N.F. appeared to be bonded with the placement. We conclude on the record of this case that this factor is neutral, weighing neither for nor against termination of parental rights.

The Emotional and Physical Needs of and Danger to the Child

The next two factors are the child's emotional and physical needs now and in the future, and the emotional and physical danger to the child now and in the future. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *Edwards v. Tex. Dep't of Protective & Regulatory Servs.,* 946 S.W.2d 130, 138 (Tex. App.—El Paso 1997, no writ), *disapproved on other grounds by, In re J.F.C.*, 96 S.W.3d at 267. A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re D.L.N.,* 958 S.W.2d 934, 941 (Tex. App.—Waco 1997, pet. denied), *disapproved on other grounds by, In re J.F.C.*, 96 S.W.3d at 267. A trial court is entitled to consider a parent's history of drug use and irresponsible choices. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

Evidence of the parents' history of domestic violence supports the trial court's best interest finding. *See In re J.I.T.P.*, 99 S.W.3d 841, 846 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (domestic violence supports finding that termination is in child's best interest even when child is not a victim of violence). A parent's future conduct may be measured by his or her past conduct in determining whether it is in child's best interest to terminate parental rights. *In re D.S.,* 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.).

The trial court's determination that John and Nina knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child and engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child supports the proposition that termination is in the child's best interest under the second and third *Holley* factors.

A parent's ongoing drug abuse is conduct that subjects a child to a life of uncertainty and instability, which endangers the physical and emotional well-being of the child. *See In re K.A.S.,* No. 07-12-00234-CV, 2012 Tex. App. LEXIS 8725, at *16-17 (Tex. App.—Amarillo Oct. 18, 2012, no pet.) (mem. op.) ("Drug use and its effect on a parent's life and ability to parent may establish an endangering course of conduct."); *In re A.B.*, 125 S.W.3d 769, 777 (Tex. App.—Texarkana 2003, pet denied). A parent's history and admissions are relevant to the best interest determination. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). A trial court is entitled to consider a parent's history of drug use and irresponsible choices. *See In re J.O.A.*, 283 S.W.3d at 346. A child's exposure to domestic violence in the home is relevant when considering

best interest. *In re. B.R.*, No. 02-12-00137-CV, 2013 Tex. App. LEXIS 41, at *36 (Tex. App.—Fort Worth Jan. 4, 2013, pet. denied) (mem. op.). "Repeated exposure to violence, even if the violence is not directed at the children, undermines the safety of the home environment" and supports a finding that termination of parental rights is in the child's best interest. *In re A.M.Y.*, No. 04-15-00352-CV, 2015 Tex. App. LEXIS 10806, at *15 (Tex. App.—San Antonio Oct. 21, 2015, no pet.) (mem. op.).

The trial court could have concluded that John and Nina are unable to meet the physical or emotional needs of N.F. and are unable to protect N.F. from physical or emotional danger. At the time of removal, N.F. tested positive for methamphetamine and needed a referral to ECI to address her physical development. John tested positive for methamphetamine and marijuana throughout the case and lost his job due to marijuana use two months before the trial. He declined to participate in court-ordered services that would have assisted him in having N.F. returned to his custody. Nina continued to use drugs after N.F. was removed which resulted in her incarceration and an extension of her probation. Nina's failure to attend the domestic violence support group and her willingness to pursue a relationship with John given their history of drug use and domestic violence suggests that similar conduct will occur in the future. *In re D.L.N.,* 958 S.W.2d at 941. The factfinder may infer that a parent's past conduct of endangering the well-being of a child may recur in the future if the child is returned. *Id.* These two factors weigh heavily in favor of the trial court's best interest determination.

Parenting Ability and Programs Available to Assist Party Seeking Custody

The fourth and fifth factors will be discussed together. In reviewing the parenting ability of the parent, a factfinder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the child. *In re G.N.,* 510 S.W.3d 134, 139 (Tex. App.—El Paso 2016, no pet.). A parent's exposure of a child to drug use and violence may be properly considered in determining whether a parent has demonstrated appropriate parenting abilities. *In re H.D.,* No. 01-12-00007-CV, 2013 Tex. App. LEXIS 5699, at *42 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (mem. op). The factfinder can infer from a parent's failure to take the initiative to utilize the available programs offered by the Department that the parent "did not have the ability to motivate herself to seek out available resources needed now or in the future." *In re J.M.,* No. 01-14-00826-CV, 2015 Tex. App. LEXIS 2130, at *21 (Tex. App.—Houston [1st Dist.] Mar. 5, 2015, no pet.) (mem. op.) (citing *In re W.E.C.*, 110 S.W.3d 231, 245 (Tex. App.—Fort Worth 2003, no pet.)).

Nina completed a drug treatment program and both parties participated in visitation with N.F. Nina did not complete individual counseling, parenting, WAV, or attend the domestic violence support group. John "stormed out" of counseling, did not attend parenting classes, did not participate in BIPP, and he did not obtain an OSAR assessment. John and Nina's failure to complete these court-ordered services could have led the trial court to infer that they did not have the ability to motivate themselves to seek out available resources now or in the future. *See id.* The trial court was entitled to find that this evidence weighed in favor of the best interest finding.

13

Plans for the Child and Stability of the Home or Placement

We will consider the sixth and seventh factors together. The sixth factor examines the plans for the child by those individuals or the agency seeking custody. The seventh factor is the stability of the home or proposed placement. Stability and permanence are paramount in the upbringing of children. *In re J.D.,* 436 S.W.3d 105, 120 (Tex. App.— Houston [14th Dist.] 2014, no pet.). The factfinder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *Id.* at 119-20.

John was living with his mother, his mother's three children, his seventeen-year-old daughter, and Nina. There is no room for N.F. at his mother's house, but "he is working on getting a place." Neither John or Nina paid any medical support for N.F. nor did they testify how they would meet N.F.'s future medical needs. Nina's plan for N.F. "depends on what happens" at the trial. She was willing to stay in Amarillo, but she desired to return to Plainview with N.F. and live with her friend Penney who was recently released from prison. N.F.'s foster placement is stable and she has made "immense progress." She was extremely overweight and had issues walking and using her legs effectively when she was removed from the care of John and Nina. After working with ECI services, she has improved. N.F. will need to be evaluated by an orthopedic specialist for her knee issues. Although the current foster parents do not plan to adopt N.F., the Department is looking for an adoptive home and "has already submitted a legal risk placement." This evidence supports the trial court finding that termination was in the best interest of N.F.

Acts and Omissions of the Parent

The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. In the eighteen months that N.F. has been in the care of the Department, John has continued to use methamphetamine and marijuana, and struggled to keep a job for more than a few months at a time. While Nina successfully completed her drug treatment, resuming a relationship with John given his ongoing drug use casts doubt on Nina's ability to remain drug-free. In considering all the evidence, the trial court could have found that the existing parent-child relationship is not a proper one.

From a review of these *Holley* factors, we conclude that the evidence is both legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of John and Nina's parental rights is in the best interest of N.F.

CONCLUSION

The judgment of the trial court terminating John and Nina's parental rights is affirmed.

Judy C. Parker
Justice