**IN the INTEREST OF G.N., a Child.**

**No. 08-16-00077-CV**

Court of Appeals of Texas,
El Paso.

September 21, 2016

---

Felix Valenzuela, Valenzuela Law Firm, El Paso, TX, Attorney for Appellant.

Leslie Capace, Texas Department of Family and Protective Services, Austin, TX, Attorney for Appellee.

Pedro Martin, El Paso, TX, Attorney Ad Litem.

Before McClure, C.J., Rodriguez, and Hughes, JJ.

## OPINION

ANN CRAWFORD McCLURE, Chief Justice

This appeal is from a judgment terminating the parental rights of F.N. (Father) to his daughter, G.N. We affirm.

### FACTUAL SUMMARY

Father and Mother[1] have six biological children, including G.N., who was two and one-half years of age at the time of trial. As reflected in orders admitted into evidence at trial, Father lost custody of his oldest child in 2009 in a case brought by the Texas Department of Family and Protective Services (the Department), and that child lives with his paternal grandmother, Irene. Father's parental rights to the next three oldest children were terminated in 2012, and the youngest child is deceased. As a result of these cases, the Department has had substantial contact with Mother and Father.

Both Mother and Father have a history of substance abuse, including use of cocaine, marijuana and opiates. Father has a substantial criminal history which includes four assault charges, three of which involved injury to a family member, four theft charges, four cases involving possession of drugs, and a resisting arrest charge. There is also evidence that Father

---

1. In order to protect the identity of G.N., the child's mother is referred to in the parties' briefs by the fictitious name, "Gail." The opinion will refer to her as "Mother". *See* TEX. R. APP. P. 9.8. The parties also refer to G.N.'s paternal grandmother by the fictitious name, "Irene." The opinion will refer to her as Irene.

violated protective orders. Additionally, Father has mental health issues involving bipolar disorder and anxiety. When Father does not take his prescribed medication, he can become aggressive and angry.

The Department became involved with G.N. when it received a report of neglectful supervision by Father and Mother on September 7, 2013. According to the report, Father was arrested for disorderly conduct, public intoxication, and assault on an officer while visiting a relative at the jail. Both parents became confrontational and combative during the visitation sign-in. Four-month-old G.N. was with her parents during this incident. The following week, the Department learned that Father had tested positive for cocaine, marihuana, and opiates. Father subsequently entered a no contest plea to the assault charge. The Department validated Father and Mother for neglectful supervision of G.N. and opened a Family Based Safety Services (FBSS) case. The Department placed G.N. with her grandmother, Irene. Following Mother's release from inpatient substance abuse treatment in December 2013, she began residing with her sister. The Department subsequently placed G.N. with Mother's sister under a safety plan which prohibited Mother from caring for G.N. without supervision. In February 2014, Mother took G.N. to the Child Crisis Center even though the safety plan required Mother's contact with the child to be supervised.

The Department filed a petition seeking permanent conservatorship of G.N. and termination of Father's parental rights if reunification could not be achieved. The trial court appointed the Department as the temporary managing conservator of G.N., and the Department placed the child with her paternal grandmother, Irene. Karen Sanchez, a Department caseworker, developed a service plan for Mother and Father. Father's service plan included the following requirements:

- Refrain from illegal or criminal activity;
- Participate in psychological and psychiatric evaluations and follow all recommendations;
- Complete anger management classes;
- Participate in parenting classes;
- Attend AA/NA at least twice a week;
- Attend individual counseling sessions;
- Submit to random drug screening;
- Continue with outpatient treatment services with Aliviane;
- Maintain gainful employment and report changes to the Department;
- Obtain a safe and stable home environment for G.N., and report any changes in living arrangements; and
- Comply with supervised visitation.

The Department modified the case plan during the course of the case.

Father and Mother initially complied with the case plan, and G.N. was returned to the home in March 2015, but the Department removed her again in June 2015 due to Mother's continued use of alcohol. The evidence at trial showed that Father and Mother failed to follow other aspects of the service plan. Father did not provide a stable and safe home environment for G.N. Father and Mother did not consistently attend AA/NA and they failed to comply with a referral for family therapy services. Father separated from Mother, but he did not notify the Department about the change in their relationship. There is also evidence that Father committed domestic violence against Mother during this period. On the day G.N. was removed from the home the second time, Father was arrested on a pending warrant for assault family violence. Father began dating another woman shortly after he

separated from Mother, and he was arrested for assaulting the girlfriend.

The trial court terminated Father's parental rights to G.N., finding by clear and convincing evidence that Father had his parent-child relationship terminated with respect to another child based on a finding that Father's conduct was in violation of § 161.001(1)(D) or (E) of the Texas Family Code, and that termination was in the child's best interest.

## BEST INTEREST

In his sole issue on appeal, Father challenges the legal and factual sufficiency of the evidence supporting the best interest finding. A parent's rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2016). Under this provision, the petitioner must (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove that termination is in the best interest of the children. *See id.* Both elements must be established and termination may not be based solely on the best interest of the children as determined by the trier of fact. *Texas Department of Human Services v. Boyd,* 727 S.W.2d 531, 533 (Tex.1987); *In the Interest of A.B.B.,* 482 S.W.3d 135, 138 (Tex.App.—El Paso 2015, no pet.). Father concedes that the evidence is sufficient to prove the predicate ground for termination. Consequently, the only issue is whether the evidence is legally and factually sufficient to prove that termination is in the child's best interest.

### Sufficiency Standards

When reviewing the legal sufficiency of the evidence in a termination case, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.P.B.,* 180 S.W.3d 570, 573 (Tex.2005), *quoting In re J.F.C.,* 96 S.W.3d 256, 266 (Tex.2002); *see In re J.O.A.,* 283 S.W.3d 336, 344 (Tex.2009). We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *In the Interest of J.P.B.,* 180 S.W.3d at 573. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. *In re J.P.B.,* 180 S.W.3d at 573; *In re J.F.C.,* 96 S.W.3d at 266.

In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenge findings. *See In re J.F.C.,* 96 S.W.3d at 266. We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266. A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

### Best Interest—Legal Sufficiency

A determination of best interest necessitates a focus on the child, not the parent. *See In the Interest of B.C.S.,* 479 S.W.3d 918, 927 (Tex.App.—El Paso 2015, no pet.); *In the Interest of R.F.,* 115

S.W.3d 804, 812 (Tex.App.—Dallas 2003, no pet.). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re B.C.S.*, 479 S.W.3d at 927. The Texas Supreme Court has enumerated certain factors which should be considered: the child's desires; the child's emotional and physical needs now and in the future; the emotional and physical danger to the child now and in the future; the parenting abilities of the individuals seeking custody; the programs available to assist those individuals to promote the child's best interest; the plans for the child by those individuals or the agency seeking custody; the stability of the home or proposed placement; the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex.1976) ("the *Holley* factors"). We also must bear in mind that permanence is of paramount importance in considering a child's present and future needs. *In re B.C.S.*, 479 S.W.3d at 927.

We begin by examining the legal sufficiency of the evidence supporting the best interest finding. The first factor is the desires of the child. G.N. was only two and one-half years of age at the time of trial and there is no evidence indicating that she had the ability to articulate her wishes. The record reflects that G.N.'s paternal grandmother has provided a loving and stable environment for her, and she is doing well physically and emotionally. Father was incarcerated off and on during the case, and his contact with G.N. was limited. The evidence related to this factor weighs in favor of the trial court's best interest finding. *See In re U.P.*, 105 S.W.3d 222, 230 (Tex.App.—Houston [14th Dist.] 2003, pet. denied)(evidence that a child is well-cared for by her foster family, is bonded to her foster family, and has spent minimal time in the presence of her father is relevant to the best interest determination under the desires of the child factor).

The next two factors are the child's emotional and physical needs now and in the future, and the emotional and physical danger to the child now and in the future. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *Edwards v. Texas Department of Protective & Regulatory Services*, 946 S.W.2d 130, 138 (Tex.App.—El Paso 1997, no pet.), *disapproved of on other grounds by In re J.F.C.*, 96 S.W.3d 256 (Tex.2002); *In re U.P.*, 105 S.W.3d at 230 (stating that children need permanency and security). A fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re D.L.N.*, 958 S.W.2d 934, 934 (Tex.App.—Waco 1997, pet. denied). The evidence at trial established that Father has issues with anger management and has committed domestic violence against Mother during the pendency of the case which caused him to be incarcerated. The Department became involved with G.N. because her parents provided neglectful supervision, and she was removed from the home twice because of her parents' conduct. Father tested positive for cocaine, marihuana, and opiates shortly after the case involving G.N. began in 2013. Despite having substance abuse issues, Father failed to attend support group meetings and he refused to be tested for drugs after a pipe containing cocaine was found in his vehicle. Based on this evidence, the trial court could infer that Father's mental health issues, criminal activity, and drug use continue to present a danger to the child. We conclude that the second and third factors weigh heavily in support of the best interest finding.

The fourth factor is the parenting abilities of the individuals seeking custody. In reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children. *D.O. v. Texas Department of Human Services*, 851 S.W.2d 351, 356 (Tex.App.—Austin 1993, no writ), *disapproved of on other grounds by In re J.F.C.*, 96 S.W.3d 256 (Tex.2002). As set forth in our discussion of the second and third factors, there is ample evidence that Father has in the past demonstrated an inability to meet the physical and emotional needs of G.N. The evidence related to this factor supports the best interest finding.

The fifth factor examines the programs available to assist those individuals to promote the child's best interest. Father participated in some of the services offered, but he failed to address his issues with substance abuse and anger management which led to his arrests on multiple occasions. The fact finder can infer from a parent's failure to take the initiative to utilize the available programs that the parent did not have the ability to motivate himself in the future. *In re W.E.C.*, 110 S.W.3d 231, 245 (Tex.App.—Fort Worth 2003, no pet.). This factor supports the court's best interest finding.

We will consider the sixth and seventh factors together. The sixth factor is the plans for the child by those individuals or the agency seeking custody. The seventh factor is the stability of the home or proposed placement. Irene has provided a stable and loving home for G.N., and she intends to adopt the child. Father asked the trial court to deny the petition to terminate his parental rights, appoint his mother as permanent managing conservator of G.N., and appoint him as possessory conservator with visitation upon his release from jail. Irene testified against the permanent managing conservatorship arrangement suggested by Father because she anticipated that he would not comply with the restrictions on his visitation, and the resulting conflicts between them would have a negative impact on the child. She believed that termination of his parental rights would minimize any conflict between them. Based on the foregoing evidence, the trial court could have concluded that these two factors weighed in favor of the best interest finding.

The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. The evidence shows that Father has a history of criminal activity, substance abuse, and domestic violence. This behavior continued even during the pendency of this case and while Father was receiving services.

The ninth factor is whether there is any excuse for the parent's acts or omissions. There is evidence that Father is receiving treatment for his mental health issues, but Irene testified that he continues to have issues with "manic anger" and episodes of yelling when he does not take his medication. Father also denied committing the domestic violence charges and insisted that both Mother and his girlfriend lied about the incidents. While Father blamed Mother for all of the issues causing the removal of G.N. from the home, Father is responsible for his substance abuse, anger management issues, and criminal conduct. Having reviewed all of the *Holley* factors, we conclude that the evidence is legally sufficient to establish a firm conviction in the mind of the trial court that termination of Father's parental rights is in the child's best interest.

*Best Interest—Factual Sufficiency*

■ We turn now to the factual sufficiency of the evidence supporting the best

interest finding. There is some contrary or disputed evidence relative to the *Holley* factors. Father participated in some programs offered to him, but he failed to address his substance abuse and anger management issues. Father denied committing domestic violence and claimed to be sober, but a reasonable fact finder could have disregarded his uncorroborated testimony in light of the other evidence admitted at trial. We conclude that the evidence is factually sufficient to support the trial court's determination that termination of Father's parental rights is in the child's best interest. Issue One is overruled. The final order terminating Father's parental rights to G.N. is affirmed.

