

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-18-00251-CV
_____

**IN THE INTEREST OF D.N.M., I.S.C., R.L.L., CHILDREN**

On Appeal from the County Court at Law
Moore County, Texas
Trial Court No. CL 130-17, Honorable Delwin T. McGee, Presiding

September 13, 2018

## MEMORANDUM OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

"Sam" appeals the trial court's order terminating his parental rights to his daughter "Riley."[1] Sam challenges the judgment of termination because the judge did not specify the grounds or best interest finding in his oral pronouncement. Sam also contends the evidence was not legally or factually sufficient to support a finding of best interest. We affirm the judgment of the trial court.

---

[1] To protect the privacy of the parties involved, we will refer to the appellant father as "Sam," the mother as "Amber," the child the subject of this appeal as "Riley," the child's siblings as "Denise" and "Ivy," and the maternal grandmother as "Renee." *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2017); TEX. R. APP. P. 9.8(b).

Factual and Procedural Background

Amber is the mother of Riley, Ivy, and Denise. Sam is the father of Riley, but Denise and Ivy have different fathers.[2]

Sam was present at the birth of Riley in March of 2013. Shortly thereafter, Amber and Riley moved out of state while Sam stayed in Dumas. In the beginning of 2017, Amber and Riley returned to Dumas. At that time, Sam obtained temporary orders for visitation with Riley. He was also ordered to pay child support of $441 per month. A few months later, the Texas Department of Family and Protective Services became involved with Amber due to her use of methamphetamine. On June 30, 2017, the Department obtained an emergency order of protection and placed Riley, Denise, and Ivy with their maternal grandmother, Renee.

The Department developed a family service plan for Sam and the trial court ordered compliance with the plan's requirements. The service plan required Sam to complete a psychological evaluation; obtain an Outreach, Screening, Assessment, and Referral (OSAR); attend rational behavior training (RBT); participate in a parenting class; complete individual counseling; maintain housing and employment; provide proof of employment; attend visits with Riley; allow home visits; maintain contact with the Department; pay his court-ordered child support; and submit to random drug screens.

During the course of the case, Sam admitted to regular marijuana use. His hair follicle drug test on September 11, 2017, was positive for marijuana and

---

[2] In the same order of termination, the trial court terminated the parental rights of Sam and the fathers of Denise and Ivy. That order also terminated Amber's parental rights as to all three of the children. Only Sam has appealed.

methamphetamine. His urinalysis drug screen was positive for marijuana on that same date. He declined to drug screen five other times when requested by the Department. His urinalysis on April 5, 2018, was also positive for marijuana and he refused to submit to a court-ordered hair follicle drug test on that same date.

Sam did not complete his court-ordered services. Notably, he failed to pay his court-ordered child support, did not maintain employment, did not participate in a drug abuse assessment, did not obtain a psychological evaluation or attend counseling, and did not visit with Riley during the pendency of the case.

When the case began, Sam was employed at JBS and Allsup's. He quit working at JBS in September of 2017 so that he could attend parenting classes. After that, he "started working small jobs here and there." He worked at McDonald's for two weeks. At the time of trial, Sam was employed at Sonic. According to Sam, he started taking his parenting classes in August of 2017, and he still had two classes left to complete as of the trial date in June of 2018. He said his counseling and RBT were scheduled for June, a date after the termination hearing. Appellant said he had been "trying to call [OSAR] and [he hadn't] got an answer back." He waited so long to start services because he was uncertain whether he was actually Riley's father.

Sam claims that he did not know about the drug screens requested by the Department. He testified that he did not have a telephone from September of 2017 until April of 2018. Later, he said he had a phone in December of 2017, but he could not remember the names of the providers he called to arrange services under the plan of service.

Sam testified that he did not pay court-ordered child support "because every time I would offer them money, they would say, 'I don't need your money, I don't need your help, stay away from our house.'"

Five-year-old Riley is placed with Renee, her maternal grandmother. Her sisters, nine-year-old Denise and eight-year-old Ivy, also live with Renee. Riley was in desperate need of eyeglasses when she was placed with Renee, and Renee took care of that need almost immediately. Renee described the children as "really good girls," and stated, "I really love them." The children are doing well in Renee's home. They have all their needs met and are thriving. Riley is bonded with Renee and was ready to start kindergarten in the fall of 2018.

According to Renee, Riley is scared of Sam because of an incident that happened between Sam and his girlfriend when he had Riley for visitation. That is the last time that Sam had visitation with Riley.

The case was tried to the court on June 12, 2018. At the conclusion of the trial, the court granted the Department's request to terminate Sam's parental rights. The trial judge did not announce any specific grounds for termination of Sam's rights, nor did he announce that termination was in the best interest of Riley. However, the trial court's written judgment ordered termination on the grounds of inadequate support, endangering conduct, constructive abandonment, and failure to comply with a court order that established actions necessary to retain custody of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(C), (E), (N), (O) (West Supp. 2017).[3] The judgment also recites that

---

[3] Further references to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

4

termination was in Riley's best interest.  *See* § 161.001(b)(2).  The trial court appointed the maternal grandmother as the permanent managing conservator of Riley.

Applicable Law

A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right."  *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003).  Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent.  *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985).  However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities."  *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1993)).  Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interests.  *See id.*

In a case to terminate parental rights by the Department under section 161.001 of the Family Code, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child.  § 161.001(b).  Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  § 101.007 (West 2014); *In re J.F.C.,* 96 S.W.3d 256, 264 (Tex. 2002).  Both elements must be established and termination may not be based solely on the best

interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.— Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d at 362. We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894-95.

Standards of Review

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all of the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.,* 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Evidence that does more than raise surmise or suspicion is not sufficient unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *In re K.M.L.,* 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that

must be proven was true, then the evidence is legally insufficient and we must reverse. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We must also consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

Analysis

Oral Pronouncement of Judgment

Sam challenges the validity of the trial court's judgment of termination because the judge did not specify the predicate grounds or include the best interest finding in his oral pronouncement.[4] In its written order, the trial court terminated Sam's parental rights pursuant to sections 161.001(b)(1) (C), (E), (N), and (O) and found termination to be in the best interest of the child.

---

[4] Sam presents this issue in his brief as "Whether the evidence was legally and factually sufficient to support the trial court's ruling to terminate Appellant's parental rights," but Sam does not brief this point nor provide the Court with any analysis of the facts and the law in regard to this issue. Accordingly, the issue, if truly raised by Sam, is insufficiently briefed. *See* TEX. R. APP. P. 38.1(i). As such, this issue is waived. *In re K.C.B.*, 280 S.W.3d 888, 896 (Tex. App.—Amarillo 2009, pet. denied) (appellant's inadequate briefing waived any challenge to best interest finding).

When there is an inconsistency between a written judgment and an oral pronouncement of judgment, the written judgment controls. *In re L.G.R.*, 498 S.W.3d 195, 206 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (upholding termination where trial court's oral pronouncement did not include best interest finding); *In re A.C.*, No. 04-12-00679-CV, 2013 Tex. App. LEXIS 801, at *4 (Tex. App.—San Antonio Jan. 30, 2013, pet. denied) (mem. op.) (upholding termination where trial court's oral pronouncement only included findings that appellant's parental rights should be terminated under section 161.001(1)(O) and section 161.003 because written judgment also included finding that termination of appellant's rights was in the best interest of the children). Here, the written judgment provides the necessary grounds to support the termination. We overrule Sam's challenge to the validity of the Order of Termination.

Best Interest of the Child

Sam also challenges the legal and factual sufficiency of the evidence supporting the best interest finding made under section 161.001(b)(2). A determination of best interest necessitates a focus on the child, not the parent. *See In re B.C.S.,* 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.). Appellate courts examine the entire record to decide what is in the best interest of the child. *In re E.C.R.,* 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006).

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors include: (1) the desires of the child, (2) the emotional and physical

needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent. *Id.* "[T]he State need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'" *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)). Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re E.C.R.*, 402 S.W.3d at 249. The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). We must also bear in mind that a child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in determining best interest. *See In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

The record reflects that Sam's relationship with Riley was non-existent for the first four years of her life and that he had minimal contact with Riley until a few months before the Department became involved in June of 2017. The last period of possession that Sam exercised with Riley involved an altercation with his girlfriend and reports that Sam

9

had been drinking and using marijuana. Renee testified that Riley is scared of Sam as a result of this incident.

Sam's actions while this case was pending belie his assertion that he wanted a relationship with his daughter—not only did he not visit with Riley, he did not pay any child support or complete any of his court-ordered services in the ten months that this case was pending. He did, however, test positive for marijuana on two occasions, and his hair follicle test at the beginning of the case was also positive for methamphetamine. Sam admitted to regular marijuana use and refused to submit to random drug testing required by the court's order five separate times. A fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re D.L.N.,* 958 S.W.2d 934, 941 (Tex. App.—Waco 1997, pet. denied), *disapproved on other grounds by, In re J.F.C.*, 96 S.W.3d at 256. In reviewing the parenting ability of the parent, a factfinder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the child. *In re G.N.,* 510 S.W.3d 134, 139 (Tex. App.—El Paso 2016, no pet.). The factfinder can infer from a parent's failure to take the initiative to avail himself of the programs offered to him by the Department that the parent "did not have the ability to motivate [himself] to seek out available resources needed now or in the future." *In re J.M.,* No. 01-14-00826-CV, 2015 Tex. App. LEXIS 2130, at *21 (Tex. App.—Houston [1st Dist.] Mar. 5, 2015, no pet.) (mem. op.) (*citing In re W.E.C.*, 110 S.W.3d 231, 245 (Tex. App.—Fort Worth 2003, no pet.)). The trial court was entitled to find that this evidence weighed in favor of the best interest finding.

The evidence established that Riley was bonded with her maternal grandmother, Renee, and that she was doing well in that placement. Renee ensured that Riley received significant dental and medical care upon being placed in her home. Renee is committed to the long-term care and protection of Riley and her sisters and intends to seek their adoption. Sam, on the other hand, had ill-defined plans for Riley and took no affirmative actions during the case to indicate that he can provide the stability and nurture necessary for Riley. His employment status was precarious, as was his ability to provide a safe and stable drug-free environment for Riley. Stability and permanence are paramount in the upbringing of children. *In re J.D.,* 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The factfinder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *Id.* at 119-20. The trial court was entitled to find that this evidence weighed in favor of the best interest finding.

When considering Riley's best interest, the trial court could have taken into account that Sam had been an absent parent and refused to provide for Riley's physical, emotional, and financial needs both before and after this case was filed. The judge could have believed that Sam would not change his behavior, given his continuation of a pattern of conduct that existed throughout Riley's life. This evidence supports a finding that the existing parent-child relationship is not a proper one.

After reviewing the *Holley* factors, we conclude that the evidence is both legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of Sam's parental rights is in the best interest of Riley.

Conclusion

The judgment of the trial court terminating Sam's parental rights is affirmed.


Judy C. Parker
Justice