

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-19-00180-CV

---

IN THE INTEREST OF A.B., A CHILD

---

On Appeal from the 222nd District Court
Deaf Smith County, Texas
Trial Court No. DR-2018D-059, Honorable Jack Graham, Associate Judge Presiding

---

October 15, 2019

MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

In this accelerated appeal, appellant, father, seeks reversal of the trial court's judgment terminating his parental rights to A.B.[1]  In two issues, father contends that the trial court erred in refusing to grant his motion for an extension of time pursuant to section 263.401(b) of the Family Code and asserts that the evidence is insufficient to support the

---

[1] To protect the privacy of the parties involved, we refer to the child by initials and to the parents as "mother" and "father."  See TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2018); TEX. R. APP. P. 9.8(b). The parental rights of A.B.'s mother were also terminated in this proceeding.  Mother does not appeal.

trial court's finding that termination is in the best interest of A.B. Finding no error, we affirm the judgment of the trial court.

## Factual and Procedural Background

In March of 2018, the Texas Department of Family and Protective Services became involved with A.B. after allegations of drug use by mother and father were reported to the Department. The report alleged that A.B. tested positive for methamphetamine at the time of her birth, indicating mother's use of the drug during her pregnancy. A.B. suffered drug withdrawals and significant health issues after her birth. During the investigation by the Department, mother and father tested positive for methamphetamine and mother acknowledged that she used methamphetamine throughout her pregnancy. The father admitted to a history of methamphetamine use and a prior conviction for injury to a child. The Department obtained an order of emergency protection of A.B. and removed her from mother and father's care.

In April 2018, the Department filed a petition seeking conservatorship and termination of parental rights. Following an adversary hearing, the Department was appointed temporary managing conservator and A.B. and a sibling were placed with a foster family in Canyon.

The Department developed a service plan for father. According to the plan, father was required to: abstain from the use of illegal drugs; submit to random drug screens; locate stable housing and employment; take parenting classes; participate in a substance abuse assessment with Outreach, Screening, Assessment, and Referral (OSAR) and follow recommendations; complete a psychosocial assessment; attend individual

counseling; participate in rational behavior therapy (RBT); attend visits with A.B.; and pay child support and medical support.

At the final hearing in April of 2019, father's attorney asked for an extension of time so that he could complete his court-ordered services. After father's testimony, the request for an extension was denied, and the Department investigator and caseworker testified.

The Department presented testimony concerning father's lack of participation in the services outlined in his plan of service. According to the caseworker, father did not regularly visit or maintain contact with A.B., he did not pay his court-ordered child support or medical support, he did not submit to random drug screens when requested in October and November, he failed to maintain employment for six months, and he did not maintain stable housing. Additionally, father did not submit to a drug and alcohol assessment, did not participate in individual counseling or RBT, and did not complete a psychosocial assessment.

According to father, he was sober for five to six months after the Department became involved, and he attended six parenting classes. In August, he was involved in an automobile accident and sustained a head injury that required him to be hospitalized for a week. He then had "a bump in the road" and used methamphetamine. The last time he used methamphetamine was February 1, 2019. After that, he moved from Hereford to Austin to get away from drugs and "to make a better living for me and my daughter." A courtesy worker was assigned to father when he moved to Austin, but he did not complete any court-ordered services. He returned to Hereford in March to attend the final hearing which was originally scheduled in March. Since he has been in Hereford awaiting the

3

final hearing, he worked "day labor" at the feed yard. After the hearing, he plans to move to Killeen to work construction and live with his girlfriend and cousin. He worked at a Sonic Drive-In for about six weeks following his brief move to Austin. By father's admission, he had been clean for "two and a half months" at the time of the final hearing. Father is not asking for A.B. to be placed with him immediately because, as he said, "I realize I am not ready for that at this moment."

The Department's plan for A.B. is adoption. A.B. was placed with one of her brothers in a foster home in Canyon. A.B. is bonded with her brother. At the time of trial there was a pending home study on a maternal uncle who lives in Houston. The Department's goal is to place A.B. with her two brothers in the uncle's home.

The trial court terminated father's parental rights on the grounds of endangering conditions, endangerment, previous conviction for injury to a child, constructive abandonment, failure to comply with a court order that established actions necessary to retain custody of the child, and use of a controlled substance in a manner that endangered the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (L), (N), (O), and (P) (West Supp. 2018).[2] The trial court also found that termination was in the best interest of A.B. *See* § 161.001(b)(2).

Applicable Law

A parent's right to the "companionship, care, custody[,] and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky*

---

[2] Further references to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

*v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1993)). Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *See id.*

In a case to terminate parental rights by the Department under section 161.001 of the Family Code, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child. § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014); *In re J.F.C.,* 96 S.W.3d 256, 264 (Tex. 2002). Both elements must be established and termination may not be based solely on the best interest of the children as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d at 362. We will affirm the termination order if the evidence is both legally and factually sufficient to support any

5

alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894-95.

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ.) The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also enjoys the right to resolve credibility issues and conflicts within the evidence and may freely choose to believe all, part, or none of the testimony espoused by any particular witness. *Id.* Where conflicting evidence is present, the factfinder's determination on such matters is generally regarded as conclusive. *In re B.R.*, 950 S.W.2d 113, 121 (Tex. App.—El Paso 1997, no writ).

The appellate court cannot weigh witness credibility issues that depend on demeanor and appearance as the witnesses are not present. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005). Even when credibility issues are reflected in the written transcript, the appellate court must defer to the factfinder's determinations, as long as those determinations are not themselves unreasonable. *Id.*

## Standards of Review

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or

6

conviction that its finding was true." *In re J.F.C.,* 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Even evidence that does more than raise surmise or suspicion is not sufficient unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *In re K.M.L.,* 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient and we must reverse. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We must also consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

Under an abuse of discretion standard, an appellate court may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling is arbitrary and unreasonable. *Downer v. Aquamarine*

7

*Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.*

Analysis

Denial of extension under § 263.401(b)

Through his first issue, father argues that the trial court erred by finding that extraordinary circumstances did not exist to grant an extension under section 263.401(b) of the Family Code.  *See* TEX. FAM. CODE ANN. § 263.401(b) (West Supp. 2018).  The trial court may extend the dismissal deadline if the movant shows "extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child."  § 263.401(b).  A trial court's denial of an extension request under section 263.401(b) is reviewed for an abuse of discretion.  *In re D.W.*, 249 S.W.3d 625, 647 (Tex. App.—Fort Worth 2008), pet. denied, 260 S.W.3d 462 (Tex. 2008) (per curiam).  "The focus is on the needs of the child, whether extraordinary circumstances necessitate the child remaining in the temporary custody of the Department, and whether continuing such is in the best interest of the child." *In re A.J.M.,* 375 S.W.3d 599, 604 (Tex. App.—Fort Worth 2012, pet. denied) (en banc).  Actions that are "considered to be the parent's fault" will generally not constitute an extraordinary circumstance*. In re O.R.F.*, 417 S.W.3d 24, 42 (Tex. App.—Texarkana 2013, pet. denied).

Father moved to extend the dismissal deadline of the underlying termination suit claiming that he needed additional time to complete the services outlined in his plan of service and "prove to myself, mainly, that I can be the father I could be for my little girl." The reasons given by father for failing to complete his services include his involvement in an automobile accident in August, his recent move from Hereford to Austin, and the inability of his courtesy caseworker in Austin to schedule any of his required classes until May. As to his drug use during the pendency of the case, father readily acknowledges that he was "in a selfish state" and "it's really my fault, but it's who you put yourself around, who you hang around is who you become." The Department was opposed to the extension because of father's lack of participation in his court-ordered services. The guardian ad litem for A.B. also objected to the extension.

We cannot find that the trial court abused its discretion by determining that there were no extraordinary circumstances necessitating an extension. By his testimony, father admitted to drug use during the pendency of this case and his failure to participate in any drug rehabilitation services. Further, father presented no plausible evidence that his failure to complete his court-ordered services constituted an "extraordinary circumstance" that merited an extension or that an extension would be in the best interest of A.B. Accordingly, we overrule the first issue.

Best interest of the child

In issue two, father challenges the legal and factual sufficiency of the evidence supporting the best interest finding made under section 161.001(b)(2). A determination of best interest necessitates a focus on the child, not the parent. *See In re B.C.S.,* 479

9

S.W.3d at 927. Appellate courts examine the entire record to decide what is in the best interest of the child. *In re E.C.R.,* 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006).

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors include: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent. *Id.* "[T]he State need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'" *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)). Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re E.C.R.*, 402 S.W.3d at 249. The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). We must also bear in mind that a child's need for permanence through the

establishment of a stable, permanent home has been recognized as the paramount consideration in determining best interest. *See In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

*The desires of the child*

At the time of trial, A.B. was thirteen months old and she was too young to express her desires. However, the evidence showed that she had spent twelve months of her life in a foster home due to father's drug use and his inability to maintain steady employment or to provide a stable home. Given the vulnerable age of A.B., this evidence weighs in favor of the trial court's best interest determination. *See In re J.M.T.*, 519 S.W.3d 258, 271 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

*The emotional and physical needs of and danger to the child*

The next two factors are the child's emotional and physical needs now and in the future, and the emotional and physical danger to the child now and in the future. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *Edwards v. Tex. Dep't of Protective & Regulatory Servs.,* 946 S.W.2d 130, 138 (Tex. App.—El Paso 1997, no writ). A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re D.L.N.,* 958 S.W.2d 934, 941 (Tex. App.—Waco 1997, pet. denied), *disapproved on other grounds by, In re J.F.C.*, 96 S.W.3d at 267. A trial court is entitled to consider a parent's history of drug use and irresponsible choices. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

A parent's drug use can indicate instability in the home environment and may be a factor to consider in determining a child's best interest. *In re J.M.*, No. 01-14-00826-CV, 2015 Tex. App. LEXIS 2130 at *22 (Tex. App.—Houston [1st Dist.] Mar. 5, 2015, no pet.) (mem. op.). "[A] parent's exercise of poor judgment currently and in the past demonstrates an inability to provide adequate care for the child." *Id.* at *21.

The evidence of father's illegal drug use before and after the birth of A.B. suggests that similar conduct will occur in the future. *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.) (recognizing that trier of fact may measure a parent's future conduct by his past conduct). Such inference is relevant not only to the stability of father's home, but also to A.B.'s emotional and physical needs now and in the future and to the physical danger in which A.B. could be placed now and in the future. The father's unwillingness to attend drug treatment also suggests that similar conduct will occur in the future, thereby constituting evidence of emotional and physical danger to the child now and in the future. *In re D.L.N.*, 958 S.W.2d at 941. The trial court could have concluded that father is unable to meet the physical or emotional needs of A.B. and is unable to protect A.B. from physical or emotional danger. These two factors weigh heavily in favor of the trial court's best interest determination.

*Parenting ability and programs available to assist party seeking custody*

The fourth and fifth factors will be discussed together. In reviewing the parenting ability of the parent, a factfinder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the child. *In re G.N.*, 510 S.W.3d 134, 139 (Tex. App.—El Paso 2016, no pet.). "A parent's drug use, inability to provide a stable

home, and failure to comply with his family service plan support a finding that termination is in the best interest of a child." *In re S.B.,* 207 S.W.3d 877, 888 (Tex. App.—Fort Worth 2006, no pet.). The factfinder can infer from a parent's failure to take the initiative to avail himself of the programs offered to him by the Department that the parent "did not have the ability to motivate himself to seek out available resources needed now or in the future." *In re J.M.,* 2015 Tex. App. LEXIS 2130, at *21 (*citing In re W.E.C.*, 110 S.W.3d 231, 245 (Tex. App.—Fort Worth 2003, no pet.)).

Father admitted that he continued to use drugs and that he failed to complete the services directly related to the reason for the child's removal, such as a substance abuse assessment or a drug treatment program. Father's failure to complete these necessary services could have led the trial court to infer that father did not have the ability to motivate himself to seek out available resources now or in the future. *See id.* The trial court was entitled to find that this evidence weighed in favor of the best interest finding.

*Plans for the child and stability of the home or placement*

We will consider the sixth and seventh factors together. The sixth factor examines the plans for the child by those individuals or the agency seeking custody. The seventh factor is the stability of the home or proposed placement. Stability and permanence are paramount in the upbringing of children. *In re J.D.,* 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The factfinder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *Id.* at 119-20.

13

There is nothing in the record to indicate that father had a plan in place to care for A.B. Father did not even ask the court to place A.B. with him because he is "not ready for that at the moment" and still needs time to complete his services. In contrast, the Department's plan for A.B. is to place A.B with her brothers who were the subject of a prior termination of parental rights case. Her current placement would continue until the home study on the maternal uncle in Houston is completed. In the event that the placement with the uncle was not approved, the Department would pursue an adoptive placement for A.B. and her brothers so that all three children could live together. This evidence supports the trial court finding that termination was in the best interest of the child.

*Acts and omissions of the parent*

The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. The evidence established that father engaged in conduct which endangered A.B.'s physical and emotional well-being. Father's history of substance abuse, his continued methamphetamine use, his lack of interest in visiting with A.B., his failure to pay his court-ordered child and medical support, and his inability to maintain stable housing or employment is evidence indicating that the existing parent-child relationship is not a proper one. In considering this evidence, the trial court could have found that the existing parent-child relationship is not a proper one.

We conclude that the evidence is both legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of father's parental rights is in the best interest of A.B. Issue two is overruled.

14

Conclusion

The judgment of the trial court terminating father's parental rights is affirmed.

Judy C. Parker
Justice