

# NUMBER 13-22-00192-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF E.L.H, M.L.H, J.O., AND I.L.H., CHILDREN

### On appeal from the 36th District Court
### of San Patricio County, Texas.

## MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Tijerina
### Memorandum Opinion by Justice Benavides

Father appeals from a judgment terminating his parental rights to E.L.H., M.L.H., J.O., and I.L.H. By a single issue, Father challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination was in the children's best interest. We affirm.

## I.    BACKGROUND

### A.    Circumstances of Removal

Regina Reece, a case worker for the Texas Department of Family and Protective Services (Department), testified at trial that the children, born in 2015, 2016, 2017, and 2019, were removed in May of 2020 based on reports of "negligent supervision" by Mother.[1] According to Reece, Mother left the children with Rhonda Brown, a foster parent from a prior case involving the three oldest children.[2] Brown reported to the Department that the children were suffering from poor personal hygiene, their teeth were rotting, and they "were no longer potty trained."

At the time of removal, Father was incarcerated for continuous family violence against Mother, meaning he assaulted Mother two or more times in a twelve-month period. *See* TEX. PENAL CODE ANN. § 25.11(a). Sentenced to a term of five years' imprisonment, Father was released during the pendency of the case after serving approximately eighteen months. Reece described Father's criminal history as "extensive" but conceded that he was a "non-offending" parent at the time of removal.

### B.    Father's Family Service Plan

Father's family service plan required him to complete numerous tasks upon his release from prison. He was required to provide a safe and stable home environment for the children, maintain employment, attend a parenting program, attend a Battering

---

[1] Mother, who reportedly suffered from drug addiction, did not appear at trial and had no contact with the Department in the preceding nine months. Her parental rights were also terminated, and she has not appealed the trial court's orders.

[2] The three oldest children were the subject of a prior emergency removal in February 2019 after the Department received reports of neglect and domestic violence. That case was closed shortly before this one began.

Intervention & Prevention Program (BIPP), participate in a psychological assessment and individual counseling, submit to drug testing on a monthly basis, maintain regular contact with the Department, and have visitation with his children. While incarcerated, Father attended anger management classes and individual counseling with the prison chaplain. However, Reece testified that once Father was released, "he did not make an effort to complete his [f]amily [p]lan of [s]ervice." According to Reece, Father "failed to provide a stable environment for his children," "failed to attend BIPP counseling for domestic violence," "failed to cooperate with the [D]epartment," and "failed to visit his children."

Father agreed that he did not complete any of the requirements of his service plan. He also acknowledged that when he was released in September 2021, he still had the written copy of the plan provided by the Department. Both Reece and Father testified that they initially had a meeting scheduled, but that Reece had to cancel it. She said she tried to reschedule the meeting, but she could no longer reach Father on his cell phone or through his mother, who did not know Father's whereabouts. Father admitted that he knew Reece's cell phone number, but his cell phone number changed, and he never provided the Department with that information.

## C.    The Children's Placement

Reece testified that the children were "doing excellent [sic] at their current placement" with Brown. The three oldest children had been with Brown for approximately two years at the time of trial. The youngest child joined her older siblings only two months before trial but "had no problems adjusting to being placed there." Brown was in the process of potty training the youngest child and had an appointment scheduled to address

a medical concern with the child's eyes. Reece agreed that the children were "safe and stable" with Brown and that she was meeting "all of their educational and medical needs."

Court Appointed Special Advocate Mary Ellen Ruiz agreed with the Department, testifying that the children now have "consistency in their lives." Ruiz reported that Brown is providing the children with "support in their school work" and teaching them "the value of hard work." She also noted that the children call their foster parents "mom and dad."

**D.    The Department's Plans for the Children**

Reece believed it was in the children's best interest to terminate the parents' rights "because [termination] would allow the children to be adopted by a family that could provide them stability and a safe lifestyle that they can grow and thrive in." In Reece's opinion, Mother and Father had demonstrated that they were incapable of doing the same. Although Brown did not intend to adopt the children, she reportedly "told the [D]epartment that she is willing to keep the kids as long as possible until they find a permanent home." Ruiz agreed with the Department that termination was in the children's best interest. She believed the children "would be in danger" if they were returned to the parents.

**E.    Father's Plans for the Children**

In December 2021, approximately three months after his release from prison, Father was arrested for murder, tampering with physical evidence with intent to impair a human corpse, and two counts of tampering with physical evidence with intent to impair. At the time of the termination hearing in March 2022, he was being detained in a county jail on those charges. Father acknowledged that he could not financially support the

4

children but felt that he could still provide for them "emotionally." However, Father also admitted that even before his previous incarceration for assaulting Mother, he did not see the children on a regular basis.

Father offered his mother as a potential family placement, but, after conducting a home study, the Department determined that her home was not "appropriate for the children." Father testified that he "contacted everybody" but could not locate any other family members willing to take care of the children.

## F.     Father's Parental Rights Terminated in Separate Case

Finally, Father admitted that during the pendency of this case his rights were terminated to another child in Bexar County. He claimed, though, that he never received notice of the proceeding and only found out about the termination after the fact.

## G.     The Trial Court's Ruling

The Department asked the trial court to appoint the Department as the children's permanent managing conservator, to continue the children's placement with Brown, and to terminate Father's parental rights. Father asked that his rights not be terminated and requested possessory conservatorship. The trial court found by clear and convincing evidence that Father had abandoned the children, refused to submit to a court order under Chapter 261 of the Texas Family Code, failed to comply with a court-ordered family service plan, had his parental rights previously terminated on endangerment grounds, and knowingly engaged in criminal conduct that resulted in his incarceration and inability to care for the children for a period of at least two years. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(C), (I), (M), (O), (Q). The trial court also found by clear and convincing

5

evidence that terminating Father's parental rights would be in the children's best interest. *See id.* § 161.001(b)(2). This appeal ensued.

## II.    STANDARD OF REVIEW & APPLICABLE LAW

A parent has a constitutional right to the care, custody, and control of his children. *In re J.W.*, 645 S.W.3d 726, 740 (Tex. 2022) (citing *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012)); *In re C.J.C.*, 603 S.W.3d 804, 811 (Tex. 2020) ("The United States Supreme Court has long held that the Constitution 'protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.'" (quoting *Troxel v. Granville*, 530 U.S. 57, 66 (2000))). Accordingly, in proceedings to terminate the parent-child relationship, the petitioner is required to prove by clear and convincing evidence one of the statutory termination grounds and that termination is in the children's best interest. TEX. FAM. CODE ANN. § 161.001(1), (2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

In parental termination cases, our legal and factual sufficiency standards honor this elevated burden of proof while respecting the factfinder's role. *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018) (citing *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002)). "The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered." *Id.* In a legal sufficiency review, we "cannot ignore undisputed evidence contrary to the finding, but must otherwise assume the factfinder resolved disputed facts in favor of the finding." *Id.* at 630–31 (citing *In re J.F.C.*,

6

96 S.W.3d at 266). Thus, "[e]vidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true." *Id.* at 631 (citing *In re J.F.C.*, 96 S.W.3d at 266).

Factual sufficiency, on the other hand, requires us to weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *Id.* We "must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006)). Therefore, "[e]vidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

The best-interest component of the termination analysis "is child-centered and focuses on the child's well-being, safety, and development." *In re J.W.*, 645 S.W.3d at 746 (quoting *In re A.C.*, 560 S.W.3d at 631). Although there is a "strong presumption" that keeping a child with their natural parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing TEX. FAM. CODE. ANN. § 153.131(b)), it is also presumed that "the prompt and permanent placement of the child in a safe environment" is in the child's best interest. TEX. FAM. CODE. ANN. § 263.307(a).

Courts consider a nonexclusive list of factors to guide their best-interest analysis: (1) the children's desires; (2) the children's emotional and physical needs now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the

7

parenting abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the children's best interest; (6) the plans for the children by those individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *In re J.W.*, 645 S.W.3d at 746 (citing *Holley* v. *Adams*, 544 S.W.2d 367, 371– 72 (Tex. 1976). The Legislature has also provided guidance on factors for courts to consider. *See* TEX. FAM. CODE. ANN. § 263.307. The same evidence that supports a termination ground may also be probative of the children's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (first citing *Holley*, 544 S.W.2d at 370; and then citing *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976)).

### III.   ANALYSIS

Father does not contest the sufficiency of the evidence supporting the five separate termination grounds. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(C), (I), (M), (O), (Q). Instead, he contends that the record is legally and factually insufficient to support the trial court's finding that termination was in the children's best interest. *See id.* § 161.001(b)(2). According to Father, "[n]o evidence was produced at all" to support that finding. Specifically, Father claims that there is "no evidence" that his conduct "negatively affected" the children in the past or was likely to do so in the future. The Department, in comparison, argues that the record contains "ample" evidence to sustain the best-interest finding. We agree with the Department.

The evidence in this case was largely uncontested. Father acknowledged that at

8

the time the children were removed, he was incarcerated for continuous family violence against Mother. *See id.* § 263.307(b)(7) (statutory best interest factors include "whether there is a history of abusive or assaultive conduct by the child's family"); *In re J.I.T.P.*, 99 S.W.3d 841, 846 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (stating domestic violence supports finding that termination is in child's best interest even when child is not victim of violence); *see also In re A.H.*, No. 04-15-00416-CV, 2015 WL 7565569, at *7 (Tex. App.—San Antonio Nov. 25, 2015, no pet.) (mem. op.) ("Evidence of the parents' history of domestic violence supports the trial court's best interests finding."). Father admitted that he did not regularly see the children before his incarceration and did not visit them at all during the nearly two years this case was pending, including after he was released from prison. *See In re M.D.M.*, 579 S.W.3d 744, 770 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ("Evidence that a child . . . has spent minimal time in the presence of the child's parent is relevant to the best interest determination and, specifically, is relevant to the child's desires.").

Father also acknowledged that after his release from prison, despite having all the necessary information, he did not maintain contact with the Department or initiate any of the services offered by his plan, including BIPP, individual counseling with a trained professional, and a parenting program. *See* TEX. FAM. CODE ANN. § 263.307(b)(10) (statutory best interest factors include "the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision"); *In re J.W.*, 645 S.W.3d at 747–48 ("[T]he same evidence that supports termination of Father's rights under Subsection (O) also

9

supports the best-interest finding." (citing *In re J.F.C.*, 96 S.W.3d at 275)); *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) ("Many of the reasons supporting termination under subsection O also support the trial court's best interest finding."). Finally, Father admitted that he was being detained on a recent murder charge and had no plan for the children's future care. *See* TEX. FAM. CODE ANN. § 263.307(b)(11) (statutory best interest factors include "the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable amount of time"); *In re G.N.*, 510 S.W.3d 134, 139 (Tex. App.—El Paso 2016, no pet.) (evidence that parent continued to engage in criminal activity during pendency of the case supported finding that termination was in the child's best interest); *see also In re A.L.K.*, No. 11-08-00226-CV, 2009 WL 1709249, at *7 (Tex. App.—Eastland June 18, 2019, no pet.) (mem. op.) (same); *In re J.S.B.*, Nos. 01-17-00480-CV, 01-17-00481-CV, 01-17-00484-CV, 2017 WL 6520437, at *21 (Tex. App.—Houston [1st Dist.] Dec. 21, 2017, pet. denied) (mem. op.) (same).

It was also uncontested that the children, who were six-, five-, four-, and two-years-old at the time of trial, were in a "safe and stable" environment with their foster placement, and that Brown was meeting "all of their educational and medical needs." *See In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the child's best interest."). The three oldest children, who had been with Brown for approximately two years at the time of trial, were bonded with their foster placement, referring to them as "mom and dad." *See id.* ("When a child is too young to express her desires, the factfinder may consider that the child has bonded

with the foster family, is well cared for by them, and has spent minimal time with a parent."). Finally, although Brown did not intend to adopt the children, she reportedly expressed a willingness to keep them "until they find a permanent home," thereby ensuring their stability for the foreseeable future. *See id.*

The collective weight of this undisputed evidence easily rebuts the presumption that maintaining Father's parental rights would be in the children's best interest. *See In re R.R.*, 209 S.W.3d at 116. Having placed all his eggs in the "no evidence" basket, Father has failed to direct the Court to any undisputed or disputed evidence that is contrary to the trial court's best-interest finding. *See In re A.C.*, 560 S.W.3d at 630 (explaining sufficiency standards of review). Nevertheless, having considered the entire record under the appropriate standards, we conclude that the trial court could have formed a firm belief or conviction that terminating Father's parental rights was in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2). Consequently, the evidence was legally and factually sufficient to support the trial court's best-interest finding, and Father's sole issue is overruled.

## IV.   CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Delivered and filed on the
25th day of August, 2022.

11