

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-19-00289-CV
_____

IN THE INTEREST OF M.G. AND M.G., III, CHILDREN

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 91,446-D-FM, Honorable Pamela C. Sirmon, Judge Presiding

February 7, 2020

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

In this accelerated appeal, appellant, Father, seeks reversal of the trial court's judgment terminating his parental rights to M.G. and M.G. III.[1]  Father challenges the sufficiency of the evidence to support the trial court's findings under the predicate grounds, and the finding that termination is in the best interest of the children.  We affirm the judgment of the trial court.

---

[1] To protect the privacy of the parties involved, we refer to the father of the children as "Father" and to the children by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2018); TEX. R. APP. P. 9.8(b).  The mother's parental rights were also terminated in this proceeding.  She has not appealed.

Background

In February 2018, the Texas Department of Family and Protective Services received a report alleging neglectful supervision and physical abuse of M.G. and M.G. III by Father.[2] The Department's investigator found the home in a deplorable condition and "not livable." There was food and trash throughout the home. As a part of the Department's investigation, drug testing was performed, and Father tested positive for methamphetamine and marijuana. The Department filed its petition for protection, conservatorship, and termination of parental rights. Following an adversary hearing, the Department was appointed temporary managing conservator, and M.G. and M.G. III were placed in separate foster homes.

The Department scheduled a family group conference and sought Father's input on the creation of a family service plan. Father attended the conference and participated in the creation of a family service plan. The caseworker reviewed the service plan with Father after it was created and periodically reviewed it with him as he completed services.

The court-ordered service plan set out several tasks and services for Father to complete before reunification with the children could occur. These tasks and services included the following: complete a psychological evaluation and follow recommendations; maintain regular contact with his caseworker; abstain from the use of illegal drugs; submit to random drug screens; locate and maintain stable housing that is free from drugs and

_____

[2] Father was previously indicted for injury to a child, a state jail felony, for recklessly causing bodily injury to M.G. in August of 2012. Father pleaded guilty and received four years' deferred adjudication community supervision. In January of 2015, Father's deferred adjudication was revoked, he was adjudicated guilty of injury to a child, and he was sentenced to confinement for one year in the Texas Department of Criminal Justice.

violence; locate and maintain stable employment; complete a psychosocial assessment and follow recommendations; attend individual counseling; take parenting classes; participate in rational behavior therapy (RBT); complete the Battering Intervention and Prevention Program (BIPP); and participate in a substance abuse assessment at Outreach, Screening, Assessment, and Referral (OSAR) and follow recommendations. The purpose of the family service plan was to work with Father to mitigate the reasons for the removal of the children. The plan warned Father that if he was "unwilling or unable to provide [M.G. and M.G. III] with a safe environment, [his] parental . . . rights may be restricted or terminated or [M.G. and M.G. III] may not be returned" to him.

The trial court conducted a status hearing on May 17, 2018, and Father and his counsel attended the hearing. Following the hearing, the trial court signed a status hearing order, approving and adopting the Department's service plan as an order of the trial court. In the order, the trial court found that Father had reviewed, understood, and signed the service plan.

Father satisfied the plan's requirement that he maintain stable employment, complete a psychosocial evaluation, participate in RBT, and attend a parenting class.

The Department caseworker scheduled an OSAR evaluation for Father three times, but he failed to complete the evaluation. Father did not participate in individual counseling or BIPP. Father admitted to his caseworker that he was continuing to use drugs "because he's coping with the stress of his children being removed." He did not consistently comply with the requirement to drug screen, but when he did submit to drug screens, he tested positive for methamphetamine and marijuana.

3

In March of 2019, the caseworker visited Father at his home and discussed appropriate living conditions for the children. The caseworker took photographs of the home which showed a lack of cleanliness and the presence of what appeared to be methamphetamine on a kitchen counter. According to the worker, two photographs showed "little baggies on the glass—the piece of glass" and "crumbling white residue on the glass piece." The last time the caseworker visited Father's home, Father said he had to leave, and the worker "was just able to see inside the living room, the kitchen, just glancing in for a moment." The general condition of the home at that time remained unchanged from her previous visits to the home. The caseworker stated she would have concerns with returning the children to Father's home because of the condition of the home and the presence of drugs. In April 2019, Father's visitation with the children was discontinued by the judge because of high levels of drug usage on his drug screens.

The maternal grandmother testified that the children need "some normal," but she was not able to have the children live with her. She said it was in the best interest of the children for the Department to find an adoptive home for both children together. The caseworker testified that Father loved the children and that there is a bond between the children and Father. The Department's plan for the children was termination of parental rights and adoption. The Department had located an adoptive placement so that both children could live together. The children assisted the Department in choosing an adoptive family. The children have met the prospective adoptive family and the children are very happy. The prospective adoptive family is "very happy as well."

On June 27, 2019, the associate judge held a final hearing concerning termination of Father's parental rights to M.G. and M.G. III. Father did not appear. After testimony,

4

the associate judge terminated Father's parental rights on the grounds set forth in Texas Family Code section 161.001(b)(1)(L) and (O), and found that termination would be in M.G. and M.G. III's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2019).[3] The court appointed the Department as the managing conservator of M.G. and M.G. III.

On appeal, Father raises three issues challenging the trial court's order of termination of his parental rights.

Standard of Review

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Even evidence that does more than raise surmise or suspicion is not sufficient unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *In re K.M.L.,* 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or

---

[3] Further references to provisions of the Texas Family Code will be by reference to "section__" or "§ __."

conviction that the matter that must be proven was true, then the evidence is legally insufficient and we must reverse. *Id.* (citing *In re J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.,* 96 S.W.3d at 266. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We must also consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

Applicable Law

Involuntary termination of parental rights is a serious proceeding implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). Consequently, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick,* 685 S.W.2d at 20. However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1993)). Recognizing that a parent may forfeit his or

6

her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interest. *In re T.G.R.-M.*, 404 S.W.3d 7, 12 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

In a case to terminate parental rights by the Department under section 161.001 of the Family Code, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination and (2) termination is in the best interest of the child. § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2019); *In re J.F.C.,* 96 S.W.3d at 264. Both elements must be established and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.,* 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.,* 113 S.W.3d at 362. We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894-95.

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ). The reviewing court must recall

that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also enjoys the right to resolve credibility issues and conflicts within the evidence and may freely choose to believe all, part, or none of the testimony espoused by any particular witness. *Id.* Where conflicting evidence is present, the factfinder's determination on such matters is generally regarded as conclusive. *In re B.R.*, 950 S.W.2d 113, 121 (Tex. App.—El Paso 1997, no writ).

The appellate court cannot weigh witness credibility issues that depend on demeanor and appearance as the witnesses are not present. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005). Even when credibility issues are reflected in the written transcript, the appellate court must defer to the factfinder's determinations, as long as those determinations are not themselves unreasonable. *Id.*

Analysis

Conviction for Serious Injury to a Child Under § 161.001(b)(1)(L)

In his first issue, Father challenges the legal and factual sufficiency of the evidence to support the termination of his parental rights under section 161.001(b)(1)(L). Parental rights may be terminated under subparagraph L if the trial court finds that the parent has "been convicted or has been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child under . . . [certain] sections of the Penal Code." TEX. FAM. CODE ANN. § 161.001(b)(1)(L); *In re D.J.V.,* No. 14-15-00419-CV, 2015 Tex. App. LEXIS 10961, at *6 (Tex. App.—Houston [14th Dist.] Oct. 27, 2015, no pet.) (mem. op.).

The Department offers no argument in response to this ground and relies solely on subparagraph O as the statutory ground supporting termination. Because only one statutory ground is required to support termination,[4] we will evaluate the parties' arguments pertaining to the legal and factual sufficiency of the evidence to support termination under subparagraph O. In light of our ultimate conclusion, consideration of Father's first issue challenging termination under subparagraph L is pretermitted. TEX. R. APP. P. 47.1.

Failure to Comply with Court-Ordered Service Plan Under § 161.001(b)(1)(O)

In his second issue, Father challenges the Department's "failure to prove by clear and convincing evidence each of the elements required to support a termination finding under subsection (O)."

A trial court may terminate parental rights based on section 161.001(b)(1)(O) if the Department establishes by clear and convincing evidence that the child was removed under Chapter 262 because of abuse or neglect, the Department has been the permanent or temporary managing conservator for at least nine months, a court order specifically established the actions necessary for the parent to obtain the return of the child, and the parent failed to comply with that order. § 161.001(b)(1)(O); *In re J.F.C.,* 96 S.W.3d at 278-79. The Supreme Court has broadened the "abuse or neglect" elements to include risks or threats of the environment in which the child is placed. *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013). In 2017, the Legislature amended section 161.001 and added subsection (d), which provides that termination under subsection (b)(1)(O) is disallowed

---

[4] *In re A.V.,* 113 S.W.3d at 362.

if the parent proves, by a preponderance of the evidence, that the parent was unable to comply with the specific provisions of the court order, and made a good faith effort to comply but was unsuccessful through no fault of the parent.  § 161.001(d).  However, in the absence of proof under subsection (d), we cannot consider "substantial compliance" with a court-ordered family service plan to be the same as completion.  *In re C.R.,* No. 07-19-00009-CV, 2019 Tex. App. LEXIS 3082, at *9 (Tex. App.—Amarillo Apr. 16, 2019, no pet.) (mem. op.).

This Court has held that, to support a termination order based on section 161.001(b)(1)(O), there must be a court order rather than simply a Department-generated service plan.  *In re B.L.R.P.*, 269 S.W.3d 707, 710-11 (Tex. App.—Amarillo 2008, no pet.); *see also In re Z.B. & Z.B.*, No. 07-16-00026-CV, 2016 Tex. App. LEXIS 7420, at *13 (Tex. App.—Amarillo July 12, 2016, no pet.) (mem. op.) (holding that failure of the appellate record to contain a court order establishing the actions necessary for a parent to obtain the return of his child defeats a termination order based on subsection (O)).  A family service plan that is signed by a parent alone does not satisfy the court-order requirement of the statute until it has been specifically incorporated into a subsequently signed court order.  *In re C.R.,* 2019 Tex. App. LEXIS 3082, at *14-15.

Section 161.001(b)(1)(O) makes clear that an order must be sufficiently specific to warrant termination of parental rights for failure to comply with the order.  *In re N.G.*, 577 S.W.3d 230, 238 (Tex. 2019) (per curiam).  On appeal, a court must consider whether the order, and the service plan, if it was incorporated into the order, was sufficiently specific.  *Id.*  A trial court order referenced by section 161.001(b)(1)(O) that establishes the actions necessary for the parent to obtain return of a child in the Department's custody is

sufficiently specific when the terms for compliance are set forth with certainty so that the parent knows what duties and obligations have been imposed. *Id.* at 238.

A Department caseworker testified that the children were removed due to concerns of the unsanitary conditions of the home and drug use by Father. During the Department's investigation, Father admitted to using methamphetamine and marijuana and drug testing confirmed his drug use. The trial court entered an "order for protection of a child in an emergency," recognizing that the children had been removed and finding that there existed a continuing danger to their physical health and safety. The Department was appointed the temporary managing conservator of M.G. and M.G. III in March of 2018. When the case was tried before the associate judge on June 27, 2019, M.G. and M.G. III had been in the Department's care for approximately fifteen months. This evidence supports a finding of the first two elements required under subsection (O), that the children were removed from a parent due to abuse or neglect and that the Department has been the children's temporary managing conservator for at least nine months.

The next two elements are whether there was a court-ordered service plan and whether the parent complied with the provisions of the order. In this case, the temporary order filed on April 3, 2018, ordered Father's compliance "with each requirement set out in the Department's original, or any amended, service plan during the pendency of this suit." Father participated in the creation of his family service plan at the family group conference. Additionally, Father and his attorney attended the status hearing on May 17, 2018, and the court made the following findings in its status hearing order:

> 2.1 The Court, having reviewed the pleadings, and considered all evidence and information required by law, including all service plans and court reports filed by the Department . . .

11

2.5 The Court, having reviewed the service plans filed by the Department, finds, except as specifically noted below, that the service plans are reasonable, accurate, and in compliance with the previous orders of the Court.

2.11 The Court finds that [Father] has reviewed the service plans.

2.12 The Court finds that [Father] has signed the plan.

4.1 **IT IS ORDERED** that, except as specifically modified by this order, the permanency plans and recommendations for the child, set out in the service plans filed with the Court, are approved and adopted by the Court as if set out verbatim in this order.

At the status hearing, the associate judge found that Father has reviewed the service plan and signed the plan. The status hearing order "approved and adopted" Father's filed service plan "as if set out verbatim in this order." At the final hearing, the service plan was admitted into evidence as an exhibit. The service plan is the only service plan in the record for Father. There is no record evidence to indicate that Father's plan of service was changed or modified. Consequently, we conclude that this evidence supports the finding that the family service plan in this case was court-ordered.

In addition to evidence supporting that the family service plan was court-ordered, the record evidence also supports a finding that the family service plan was sufficiently specific to support termination. The family service plan incorporated into the trial court's order in May 2018 specifically stated the actions and responsibilities that are necessary to achieve the plan goal during the period of the service plan.[5] Regarding those tasks, the caseworker testified that Father completed some of these services, but not all of them.

---

[5] The plan detailed a task/service required, a timeframe for accomplishing the task/service, and an address and contact information for service providers.

Father completed RBT, submitted to a psychosocial evaluation, maintained stable employment, and attended one parenting class.

The caseworker also testified that Father has not maintained a drug-free lifestyle or an appropriate home. The caseworker testified that Father has not consistently complied with the requirement to drug screen and the drug screens he has taken have been consistent with his admission of use of methamphetamine and marijuana. Additionally, Father told the caseworker that he continued to use drugs during the case, because "[h]e's coping with the stress of his children being removed." Less than three months before trial, the home was "definitely not clean" and had food and trash "everywhere." Further, Father did not complete parenting classes, participate in individual counseling, complete BIPP, or complete a substance abuse assessment by OSAR.

> As to drug testing, the plan provided:
>
> [Father] will maintain a drug-free lifestyle and abstain from the use of illegal drugs or drugs for which he does not have a valid prescription. [Father] will submit to random drug tests (including saliva test, UAs, and hair follicle) as requested by the Department on the day requested and at the location requested. [Father] will test "negative" during these random tests— indicating non-use of illegal drugs or drugs for which he does not have a valid prescription. Failure to take the random drug test on the date requested will be considered as "positive" to the Department. It is also seen as failure to follow the court order or service plan. The Department will pay for the drug tests.

The plan then identified the name, address, and phone number of the site where drug tests would be administered.

> As to housing, the plan provided:
>
> [Father] will locate and maintain stable housing that has working utilities and is free from drugs and violence. [Father] will remove or lock up anything in the home that poses a risk of harm to his children. [Father] will establish daily routines and schedules, and learn to live a less chaotic lifestyle. [Father] will allow announced and unannounced home visits to his home.

13

As to parenting classes, the plan provided:

[Father] will actively participate in and complete parenting classes. [Father] will participate in a class that teaches him parenting skills which are appropriate for the ages of children. [Father] will be responsible for attending two one-day classes if he does not take a ten week class. [Father] will exhibit proper parenting skills in all of his interactions with his children. [Father] will be responsible for any payments regarding his classes.

The plan then provided the name, address, and phone number of three local organizations where parenting classes are offered.

As to individual counseling, the plan provided:

[Father] will attend individual counseling with [a] therapist to address the issues related to his drug abuse, separation from his children, his criminal history and pending criminal charges, issues related to the removal of the children, and any addition[al] issues that arise during the sessions. [Father] will attend at least six (6) bi-weekly sessions of counseling or until released by the therapist. [Father] will follow any and all recommendations made by the therapist.

The plan then provided the name, address, and phone number of the counseling service.

As to completion of BIPP, the plan provided:

[Father] will participate in and complete the Battering Intervention and Prevention Program (BIPP). [Father] will attend BIPP classes weekly until completing the program. He will provide a certificate to this worker no later than 10 days after the completion of classes. [Father] will demonstrate an understanding of the material presented and be able to apply it to his everyday interactions. [Father] will follow through with any and all recommendations made by the class instructor.

The plan then stated the name, address, and phone number of the BIPP provider.

As to the substance abuse assessment, the plan provided, "[Father] will participate in and complete a substance abuse assessment with OSAR. Father will follow through with any and all recommendations from OSAR." The plan then provided the name and address where OSAR would be administered.

14

Father does not assert that the order was vague or that he did not know where to go or who to call to schedule classes or individual counseling. In fact, the evidence indicates otherwise, as Father completed several services under the plan. While Father indicated to the caseworker that, for services in general, he needed to maintain his job rather than complete services, Father did not request an accommodation for his work schedule. If he had done so, the Department has "multiple" therapists that it can utilize, and some therapists are available as late as 8:00 p.m. to 9:00 p.m. The caseworker also testified that Father had a work truck available for transportation. Moreover, Father attended an OSAR assessment, but failed to return with information needed to complete the assessment. This evidence suggests that the family service plan was sufficiently specific to put Father on notice as to what tasks he was required to complete.

We conclude the trial court was presented with clear and convincing evidence sufficient to support a finding that Father failed to comply with specific, itemized tasks, which were contained within a court order, required to obtain the return of his children. *See In re N.G.*, 577 S.W.3d at 238. As such, Father's second issue is overruled.[6]

Best Interest of the Children

In his third issue, Father challenges the legal and factual sufficiency of the evidence supporting the best interest finding made under section 161.001(b)(2). A determination of best interest necessitates a focus on the child, not the parent. *See In re B.C.S.,* 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.). Appellate courts

---

[6] Father did not expressly raise an issue under section 161.001(d), which provides exceptions to termination of parental rights under section 161.001(b)(1)(O). *See* § 161.001(d). As such, we do not address section 161.001(d) in our analysis of this issue.

15

examine the entire record to decide what is in the best interest of the child. *See In re E.C.R.,* 402 S.W.3d at 250. There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006).

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors include: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent. *Id.* "[T]he State need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'" *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002)). Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re E.C.R.*, 402 S.W.3d at 249. The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). We must also bear in mind that a child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount

consideration in determining best interest. *See In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

*The desires of the children*

At the time of trial, M.G. was eleven years old and M.G. III was nine years old. The caseworker testified that Father loved the children and that there is a bond between the children and Father. There was also testimony that the children assisted the Department in choosing an adoptive family and that the children are happy with the prospective adoptive family. This factor weighs neither for nor against termination.

*The emotional and physical needs of and danger to the children*

The next two factors are the child's emotional and physical needs now and in the future, and the emotional and physical danger to the child now and in the future. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *Edwards v. Tex. Dep't of Protective & Regulatory Servs.,* 946 S.W.2d 130, 138 (Tex. App.—El Paso 1997, no writ). A parent's inability or unwillingness to provide adequate care for his children, lack of parenting skills, and poor judgment may be considered when looking at the children's best interest. *In re C.A.J.,* 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.). A parent's ongoing drug use is conduct that subjects children to a life of uncertainty and instability, which endangers the physical and emotional well-being of the children. *In re J.O.A.,* 283 S.W.3d 336, 346 (Tex. 2009).

Father dismissed concerns expressed by the Department caseworker about the cleanliness of the home, and the physical condition of the home changed very little during

the Department's involvement. Moreover, Father did not complete his plan of service and his continued use of marijuana and methamphetamine pose a risk to M.G. and M.G. III's safety and stability. Less than three months before trial, the caseworker testified that there was a substance she identified as methamphetamine on Father's kitchen counter. Father's unwillingness or inability to maintain a drug-free home suggests that similar conduct will occur in the future, thereby constituting evidence of emotional and physical danger to the children now and in the future. *In re D.L.N.,* 958 S.W.2d 934, 941 (Tex. App.—Waco 1997, pet. denied). The trial court could have concluded that Father is unable to meet the physical or emotional needs of M.G. and M.G. III and is unable to protect the children from physical or emotional danger. These two factors weigh heavily in favor of the trial court's best interest determination.

*Parenting ability and programs available to assist party seeking custody*

The fourth and fifth factors will be discussed together. In reviewing the parenting ability of the parent, a factfinder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the child. *In re G.N.,* 510 S.W.3d 134, 139 (Tex. App.—El Paso 2016, no pet.). "A parent's drug use, inability to provide a stable home, and failure to comply with his family service plan support a finding that termination is in the best interest of a child." *In re S.B.,* 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.). The factfinder can infer from a parent's failure to take the initiative to avail himself of the programs offered to him by the Department that the parent "did not have the ability to motivate [him]self to seek out available resources needed now or in the future." *In re J.M.,* No. 01-14-00826-CV, 2015 Tex. App. LEXIS 2130, at *21 (Tex. App.—

Houston [1st Dist.] Mar. 5, 2015, no pet.) (mem. op.) (citing *In re W.E.C.*, 110 S.W.3d 231, 245 (Tex. App.—Fort Worth 2003, no pet.)).

Father did not testify at trial regarding his parenting abilities. However, the Department introduced evidence concerning Father's 2012 indictment for injury to a child. The indictment alleged that Father struck M.G.'s face with a remote control and he pleaded guilty and received deferred adjudication community supervision. While Father completed some of his court-ordered services, he failed to complete a substance abuse assessment, failed to abstain from the use of illegal drugs, and continued to live in an unsafe home environment despite the Department's intervention. Father's failure to complete these necessary services could have led the trial court to infer that Father did not have the ability to motivate himself to seek out available resources now or in the future. *See id.* at *21-22. The trial court was entitled to find that this evidence weighed in favor of the best interest finding.

*Plans for the children and stability of the home or placement*

We will consider the sixth and seventh factors together. The sixth factor examines the plans for the children by those individuals or the agency seeking custody. The seventh factor is the stability of the home or proposed placement. Stability and permanence are paramount in the upbringing of children. *In re J.D.,* 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The factfinder may compare the parent's and the Department's plans for the children and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *Id.* at 119-20.

Since Father did not appear at the final hearing, there is no evidence of his plans for the children should the children be returned to his care. There is evidence that Father

19

is unable or unwilling to provide a safe, stable, and drug-free home environment suitable for M.G. and M.G. III. Conduct that subjects children to a life of uncertainty and instability also endangers the children's physical and emotional well-being. *In re M.R.J.M.,* 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.).

The Department's plan for the children was termination of parental rights and adoption. The maternal grandmother testified that the children need "some normal," and it is in the best interest of the children for the Department to find an adoptive home for both children together. The children assisted the Department in choosing an adoptive family and the children have met the family. "[T]he children are very happy," and the prospective adoptive family is "very happy as well."

The Department's plan for the children would provide permanence and stability for M.G. and M.G. III. This evidence supports the trial court finding that termination was in the best interest of the children.

*Acts and omissions of the parent*

The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. The record indicates Father pleaded guilty to injury to a child in 2012 and that M.G. was the victim. Father admitted to using methamphetamine and marijuana prior to the children's removal and during the pendency of this case. Father's drug use was of such a magnitude that the judge discontinued his visitation with the children two months before trial. Moreover, Father did not attend the final hearing. The absence of a parent at the trial to terminate his parental rights is prejudicial to the parent. *In re J.D.S.,* 111 S.W.3d 324, 327 (Tex. App.—Texarkana 2003, no pet.). Father was aware from the time that M.G. and M.G. III were taken into care by

the Department that his parental rights were in jeopardy and that he was required to complete services offered by the Department in order to be reunited with the children. Although the evidence showed that Father completed some of the service plan's requirements, the evidence showed that Father did not comply with the portion of his plan designed to address the reasons the children were taken into care, including: Father's failure to maintain stable housing that is free from drugs, maintain a drug-free lifestyle and submit to random drug screens, and participate in and complete a substance abuse assessment.

In considering this evidence, the trial court could have found that the existing parent-child relationship is not a proper one.

We conclude that the evidence is both legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of Father's parental rights is in the best interest of M.G. and M.G. III. Issue three is overruled.

Conclusion

The judgment of the trial court terminating Father's parental rights is affirmed.

Judy C. Parker
Justice

Quinn, C.J., concurs in the result.

21